CHARLES A. WINCHESTER *vs.* DANIEL CHARTER & wife.

In order to set aside a voluntary conveyance, made on a meritorious consideration, it must be shown either that the grantor was indebted at the time beyond his probable means of payment, remaining after the conveyance, or else that he had an actual and express intent to defraud subsequent creditors; that is, an intent to contract debts, and a design to avoid payment of them by the conveyance; and a jury are not warranted in findign such fraudulent intent from proof simply that the conveyance was made with a design to settle the property upon the grantor's wife, so that it should not be exposed to the hazards of his future business, or liable for any future debts which he might contract.

WRIT OF ENTRY, brought by the assignee in insolvency of Daniel Charter, against him and his wife, to recover three parcels of land in Springfield.

At the trial in the superior court, before *Vose,* J., it appeared that on the 2d of August 1860 Daniel Charter, being the ownei

of the premises, and at the request of his sons, who were his creditors, executed and delivered a deed of warranty thereof to Henry Kennedy of Hartford, without pecuniary consideration, but with the agreement that Kennedy should convey the same to Mrs. Charter, to her sole and separate use. This deed was returned to Charter to be placed on record, but, Charter being informed that the deed was not valid by reason of his wife's not having signed it, he omitted to have it recorded until January 11th 1861; and on the 25th of that month Kennedy executed and delivered a deed of the same premises to Mrs. Charter, which was duly recorded three days afterwards.

There was evidence tending to show that Charter, at the date of the deed, owned personal property worth between two and three thousand dollars, and that his whole indebtedness (except certain sums due to his sons, which have never been paid, or proved in insolvency against his estate) did not exceed fifteen hundred dollars; that before the 1st of September 1860 he procured a loan of fifteen hundred dollars, on a mortgage of the demanded premises, with which he paid all his indebtedness, except the sums due to his sons; that in the same September he incurred another debt of $200, which he paid prior to the next January; that prior to August 1860, he had greatly reduced his business; that he contracted debts, and bought and sold wood and wood lots, in the prosecution of his business, to a greater or less extent from August 1st 1860 until he went into insolvency in June 1863; and that the earliest debt which remained unpaid at the time of his insolvency, excepting his debts to his sons, was contracted in October 1861.

The judge gave instructions upon the effect of this conveyance upon the rights of existing creditors, which were not objected to. But as to future creditors, the defendant requested the judge to instruct the jury that "to avoid this deed there must have been not only an intention to secure the property against future creditors, but there must have been a design, then existing in the grantor's mind, to make creditors with a view to cheating them," and also, "that the intention to put this property beyond the control of future creditors would not invalidate the deed, unless

there was also the fraudulent intention to obtain credit on the supposition that he was the owner of this property." The judge declined to give these instructions, but did instruct the jury, that "in order to recover in behalf of future creditors, the jury must be satisfied that it was at least a part of the purpose which Charter intended and designed to accomplish by this settlement on his wife, to place this property where future creditors could not reach it to satisfy their debts, or, in other words, that he made it to delay and defraud those creditors whose debts he might contract subsequent to its date; that it was not sufficient that it was the effect of such settlement to hinder and prevent subsequent creditors from satisfying their debts out of the property so conveyed to the wife; there must be satisfactory proof that he designed and intended that it should have that effect; that it might aid the jury in determining whether such was his design and purpose, by inquiring whether, at the time of the conveyance to Mrs. Charter, he contemplated contracting future debts, whether he was engaged in any business at that time, in which, in its ordinary prosecution, he might anticipate the probability of contracting debts."

The jury returned a verdict for the demandant, and the tenants alleged exceptions.

*N. A. Leonard,* for the tenants.

*J. Wells,* (*A. L. Soule* with him,) for the demandant.

BIGELOW, C. J. The instructions given to the jury at the trial of this case seem to us to have been defective by reason of an omission to state with accuracy and precision the rule of law applicable to the rights of creditors, whose debts were contracted subsequent to a voluntary conveyance, to defeat and set it aside as being fraudulent and void as against them.

It is now the well-settled rule of law in this commonwealth that a conveyance of property made only on a meritorious consideration, as of blood and affection, is not *per se* fraudulent. Whether it be so or not is a question of fact, to be determined on a view of all the circumstances attendant upon the making of a grant or conveyance, especially on the condition of the vendor or grantor as to property and as to the amount of debts

which were due and owing from him at the time he undertook to dispose of his estate, or a portion thereof, by gift, or without adequate consideration. *Thacher* v. *Phinney*, 7 Allen, 146, 150. *Lerow* v. *Wilmarth*, 9 Allen, 382, 386. On the one hand, it could not be properly adjudged that a voluntary conveyance was fraudulent and void, either as against existing or subsequent creditors, if it was proved to have been made by a person substantially free from debt, and possessed of a large amount of property, who had no purpose to hinder or delay the creditors, and whose sole motive was to transfer the property for the benefit of his wife or children, so that it should not remain at the hazard of business or be subjected to the risk of improvidence. On the other hand, it would be very clear that a voluntary transfer of property by a person deeply indebted, and whose property was inadequate or barely sufficient for the payment of his debts, would furnish strong presumptive evidence of fraud; and, if unexplained, would be set aside as void against creditors.

Nor would this presumption of fraud be confined in its effect to preëxisting creditors. It would be equally strong as to those whose debts were subsequently contracted, because a transfer of property under such circumstances affords a reasonable ground of presumption that the intent with which it was made was to put beyond the reach of creditors, future as well as present, the fund or capital to which they had a right to resort for the payment of their debts. Whenever, therefore, no actual fraud or express intent to hinder and delay creditors is proved, it is necessary to show that a grantor at the time of making a voluntary conveyance was indebted beyond his probable means of payment remaining after the conveyance, in order to lay the foundation for the inference that it was made with a fraudulent design. It was in this sense that it was said in *Thacher* v. *Phinney*, *ubi supra*, that in order to avoid a voluntary conveyance as to subsequent creditors, it would be important to show that it was fraudulent as to existing creditors; otherwise, in the absence of other evidence of intent, it would be difficult to establish a valid ground for the presumption that the transfer was made with a view to hinder and delay subsequent creditors. But it by no

means follows that a voluntary conveyance cannot be set aside by subsequent creditors unless it is shown to have been made in fraud of the rights of preëxisting creditors. If such were the rule of law, it would put beyond the reach of creditors, whose debts were contracted subsequent to a voluntary conveyance, property which was transferred fraudulently and collusively, with an express intent to deceive and defraud them. But it is perfectly well settled that if there be any design of fraud or collusion, or any intent to deceive third persons, in making a voluntary conveyance, although the grantor be not then indebted, the transfer will be voidable by subsequent creditors. · In such cases the conveyance is made *mala fide,* and cannot be upheld in derogation of the claims of creditors. *Reade* v. *Livingston,* 3 Johns. Ch. 481. *Bennett* v. *Bedford Bank,* 11 Mass. 421. *Damon* v. *Bryant,* 2 Pick. 411. *Parkman* v. *Welch,* 19 Pick. 231, 237. Story on Sales, (3d ed.) § 513, and cases cited in note.

It seems to us that the case at bar was of a nature to require that these familiar and well settled principles should be fully stated and explained to the jury. The facts, as stated in the exceptions, disclose a case of a voluntary conveyance by a person who was perfectly solvent, and who subsequently paid in full all the debts which he owed at the time of the grant. The sole motive of this transfer appears to have been to secure the property for the benefit of the wife of the grantor. No fact is stated which tends to show that it was made with any intent to hinder and delay future creditors. If such was the real aspect of the case before the jury, the defendants were entitled to more explicit instructions than were given at the trial. It was not sufficient, to avoid the conveyance in question as to subsequent creditors, to show that it was made voluntarily and with an intent to put the property in the hands of a third person, so that it would be for the use and benefit of the wife, and beyond the reach of creditors to whom the grantor might at some future day become indebted. These facts of themselves, unsupported by other evidence, would not warrant a jury in finding a fraudulent intent. It was necessary for the plaintiffs to go further, and to offer evidence from which it could be fairly inferred that the

conveyance was made with an intent to put the property, so that it could not be come at to secure. debts by attachment or seizure, which the grantor at the time of the conveyance intended to contract, and which he did not intend to pay or had reasonable ground to believe that he might not be able to pay. We do not mean to say that the evidence should tend to show that the grantor intended to contract any particular debt or debts, but it should go far enough to satisfy the jury that there was an intent on the part of the grantor to contract debts, and a design to avoid payment of such debts by the conveyance of his property.

As the instructions are stated in the exceptions, we fear that they might have been understood by the jury as authorizing them to find the conveyance to be fraudulent, although the grantor, when he made it, had no intent to become indebted beyond his ability to pay ; and had good reason to believe himself solvent, and did not design to hinder and delay creditors, merely because he made a conveyance of property for the benefit of his wife, in order to secure it against the risk of future insolvency which might possibly befall him in the course of his future dealings. The jury were in substance told that if the effect of the conveyance to the wife was to hinder and delay creditors to whom the grantor subsequently became indebted, and that the grantor in making it contemplated that it might have that effect, it would be fraudulent and void. The difficulty with the instruction is, that it leaves out of view the existence of a fraudulent intent. No voluntary conveyance can be made which may not in certain contingencies tend to put property beyond the reach of creditors of the grantor, and the happening of such contingencies may be reasonably supposed to be within the contemplation of every person who does not intend to withdraw himself from the active pursuits of life. But such a conveyance is not for that reason void as against subsequent creditors, unless it is also shown to have been made with a design to defraud them, as has been already fully stated.

*Exceptions sustained.*